IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HARRY R. RHOADES,                    *
                                     *
        Plaintiff,                   *
                                     *
vs.                                  *    CIVIL ACTION 06-00274-CG-B
                                     *
MICHAEL J. ASTRUE,                   *
Commissioner of                      *
Social Security,                     *
                                     *
        Defendant.                   *

### REPORT AND RECOMMENDATION

Plaintiff Harry R. Rhoades ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. Oral argument took place on April 10, 2007. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

### I.   Procedural History

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income in May 2003, alleging that he has been disabled since May 2002, due to back, right shoulder and feet problems, a double hernia and hearing loss. (Tr. 69-72, 89, 92, 422-424). Plaintiff's applications were denied at the initial stage and upon reconsideration. (Id. at 37-43, 425-

431).   He filed a timely Request for Hearing before an Administrative Law Judge ("ALJ").   (Id. at 44-45).   On July 22, 2004, Administrative Law Judge James D. Smith ("ALJ Smith") held an administrative hearing, which was attended by Plaintiff, his representative, and a vocational expert.   (Id. at 438-445).   On November 17, 2004, a supplemental hearing was held, and was attended by Plaintiff, his representative and a vocational expert. (Id. at 446-461).   On March 17, 2005, ALJ Smith issued an unfavorable decision finding that Plaintiff is not disabled.   (Id. at 15-32).   Plaintiff's request for review was denied by the Appeals Council ("AC") on March 27, 2006.   (Id. at 6-8, 13).   The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.   (Id.)   The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

A.   Whether the ALJ erred by failing to find that Plaintiff's hearing loss is a severe impairment?

B.   Whether the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's physical limitations when determining his RFC?

## III.   Factual Background

Plaintiff was born on July 26, 1947.   (Tr. 89, 422, 441, 449). He has a 12th grade education and vocational certifications in computer programs and graphics, photography instrumentation, automobile mechanics and pipe fitting.   Plaintiff has past relevant

work ("PRW")  as a photography laboratory technician, scaffold builder, assembler, fast food worker, and security worker. (Id. at 93-94, 97, 100-109, 112-122, 138, 339, 449).  Plaintiff testified that he last worked in May 2002, and that he has been unable to find work since then because no one seemed to want to hire people with "any kind of back problem."  (Id. at 450-451).  Plaintiff indicated that he collected unemployment benefits until they expired. (Id. at 450).

Plaintiff testified that he has back problems, and that he has received pain medication for his back and was undergoing physical therapy and treatment; however, he has been told that surgery will not help his back.  (Id. at 442-443, 451-452). Plaintiff also testified that he had a double hernia operation in 2004 and that since the surgery, he has not really had any problems from the umbilical hernia but sometimes has sharp pains around the groin hernia.  (Id. at 451, 454-455).  Plaintiff also indicated that he has problems with his right shoulder, and that he has heel spurs in both feet.  (Id. at 452-454).  According to Plaintiff, Dr. Rhome, a VA physician, has fit him for orthopedic shoes and risers for his feet, legs, hips and back.  (Id. 453-454).  Plaintiff's medications have included Aleve, Ibuprofen, Aspirin, Methocarbamol, Naproxen, Ranitidine HCL, Cyclobenzaprine HCL, artificial tears, eye ointment and Hydrocortisone cream ; however, he testified that he is no longer taking his pain medication regularly – only when

absolutely necessary.   (Id. at 96, 110, 128, 139-140; 254).
Plaintiff also testified that he has "4.11 binaural hearing loss"
in both ears (a high frequency loss) and has to ask people to
repeat themselves.  (Id. at 455-456).

Plaintiff testified that he could lift maybe 5-10 pounds all
day and could lift up to 15-20 pounds 1-2 times per day.  (Tr.
456).  According to Plaintiff, if he stands for more than 10-20
minutes, his back hurts so badly that he has to sit down and he
doubts he could stand for 1 hour at a time.  (Id. at 456-457).
Plaintiff also testified that he cannot sit for any extended period
before having to get up and move around to avoid becoming stiff.
(Id. at 457).  He further testified that he cannot walk more than
one-half mile before having to stop due to pain.  (Id.)  Regarding
daily activities, Plaintiff testified that he is usually watching
television, and that he goes outside every hour or so to smoke,
stretch, and move around a bit.  (Id.)  Plaintiff also testified
that while he does not perform any yard work, he assists with some
household chores such as vacuuming and taking out the garbage.
(Id. at 457-458).

## IV.   Analysis

### A.   Standard Of Review

In reviewing claims brought under the Act, this Court's role
is a limited one.  The Court's review is limited to determining 1)
whether the decision of the Secretary is supported by substantial

4

evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[2]

In the case <u>sub judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits and was insured for benefits through December 31, 2007.  (Tr. 15-32).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (<u>Id</u>.)  The ALJ concluded that while Plaintiff had the severe impairments of status post inguinal hernia, degenerative joint disease ("DJD"), chronic axial myofascial pain syndrome, and

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  <u>Id</u>. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).  <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

degenerative osteoarthritis of the lumbar and thoracic spine, they did not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id.) The ALJ added that Plaintiff's bilateral bone spurs, right shoulder impingement, memory loss, limited right hand range of motion, migraines and mild hearing loss were not severe impairments. (Id.) The ALJ next determined that Plaintiff's allegation, that his pain precluded the performance of work-related activities, was not credible. (Id.) The ALJ concluded in light of VE testimony and other evidence of record, that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work, and that he could perform his PRW as a photo lab technician (light, unskilled) and fast food worker (light, unskilled) such that he was not disabled. (Id.)

The relevant[3] evidence of record reflects that Plaintiff was treated at the Central Texas Veterans Health Care System in Austin, Texas from December 2001 through August 2002. During the period of treatment, Plaintiff reported facial pain, right neck pain and back pain. A CT scan of his head in January 2002 revealed a small hypodensity in subcortical white matter in the right frontal region. Plaintiff was diagnosed with Bell's Palsy[4] and was referred for

---

[3]While the undersigned has reviewed the entire record, for instance including those records related to mental evaluations, only those records which pertain to Plaintiff's claims on appeal are set forth here.

[4]Bell's Palsy is a paralysis or weakness of the muscles on one side of your face.  See http://www.webmd.com (Last visited 4/2/07).

physical therapy. Plaintiff was also prescribed facial neurostimulation for twenty minute periods with min C galvanic stimulator. Additionally, Plaintiff was given ibuprofen 800 mg and Flexeril to help with his complaints regarding lower back pain. The treatment notes reflect that in May 2002, Plaintiff reported that his neck pain had resolved, and that he was happy with the results of his Bells Palsy treatment. At that point, Plaintiff was discharged as no further treatment was needed. (Tr. 141-167).

Plaintiff was treated at the Biloxi VA from July-December 2003 for joint pain, chronic low back pain, alcohol dependence, tobacco use disorder, inguinal hernia, umbilical hernia, skin disorders, sinusitis, toothaches, dyspepsia and neck pain. He reported that he was not working due to significant low back pain. A cervical spine x-ray in November 2003 revealed osteophytic changes throughout; otherwise normal. A physical exam revealed normal posture/gait, no edema, mild hearing loss in both ears, small umbilical hernia and a mild right sided inguinal hernia without significant bulging. Plaintiff reported that he can sit for 3 hours at one time, stand or walk for more than 30 minutes, and that he has difficult bending, lifting and carrying. (Tr. 193-246).

During November 2003, Plaintiff underwent TENS to his back and neck for twenty minute periods and reported that it felt good and that he thought it would help with his back pain. Plaintiff was also given hot/cold pack therapy and electric stimulation therapy.

Additionally, Plaintiff was evaluated for shoe lifts and issued a silicone heel for his complaints of heel spurs. By December 2003, Plaintiff was taken off of pain medication, and started on Indocin. (Tr. 193-246).

Plaintiff was treated from January 1995 through June 2003 at the Mobile VA Outpatient Clinic. At his June 6, 2003 appointment, Plaintiff reported that he lived in the woods and that he had walked 2 to 3 miles in the rain. Plaintiff also complained of mid to low back pain, pain/burning from a hernia, irritable bowel syndrome, hearing loss, bone spurs in heels, skin numbness on the right thigh and bilateral foot pain. Plaintiff reported that his pain was a 10 on a 1-10 pain scale and that 9 was a tolerable level for him. Thoracic spine X-rays on June 9, 2003 reflected osteophyte formation consistent with degenerative disease. Plaintiff was assessed with degenerative joint disease ("DJD"), lower back, ankle and foot pain; hiatal hernia by history and tobacco dependence. He was given Motrin and Robaxin. (Tr. 328-337).

On July 24, 2003, Plaintiff was evaluated by Lucille T. Williams, Psy. D. ("Dr. Williams"). Plaintiff reported that he is unable to work due to back problems (pulled muscles, pinched nerves, arthritis), three hernias, heel spurs and hearing and eyesight problems; his medication consisted of a pain medicine and a muscle relaxer. (Tr. 168-170). According to Plaintiff, his daily activities consisted of visiting with his aunt, looking at

classifieds, finding food, washing clothes, watching television, listening to the radio and reading the Bible; he added that he used to be very physically active. (<u>Id</u>.) Dr. Williams found that Plaintiff's thought processes were grossly intact, that he had no loose associations and that he did not appear confused. His conversation was normal and his insight and judgment were deemed good. Dr. Williams's diagnostic impression was "no diagnosis on Axis I," and she concluded that Plaintiff is able to manage his funds and that his estimated intelligence is average. (<u>Id</u>. at 170).

On July 28, 2003, Plaintiff was evaluated by Eric G. Becker, D.O. ("Dr. Becker"). His chief complaint was chronic low back pain from a shipyard incident years before. Plaintiff reported that he has experienced some relief with chiropractic treatment, anti-inflammatories and muscle relaxers. (Tr. 171-172). He stated that the pain is non-radiating but that he has chronic numbness in the lateral aspect of the right thigh which is aggravated by bending, lifting, straining, walking or sitting for long periods of time. (<u>Id</u>. at 171). Plaintiff's physical examination revealed an unremarkable range of motion; anterior thoracolumbar flexion from 0-90 degrees; ability to squat and arise holding on to a counter top in order to do so; complaints of knee and low back pain when squatting/arising; negative straight leg raising in seated supine position; 1+ and symmetric DTR's for patella and Achilles bilaterally, but otherwise not grossly impaired gait; and some

paraspinal muscle tenderness diffusely in lumbar area. (Id. at 172). Dr. Becker assessed Plaintiff with a history of lumbar radiculopathy, probably due to lumbar disk disease and underlying DJD; and probable chronic obstructive pulmonary disorder. (Id.) Plaintiff's lumbar spine x-rays revealed some minimal spurring from the margins of the vertebral bodies but no acute process or severe degenerative change. (Id. at 173).

On August 7, 2003, Ellen N. Eno ("Dr. Eno") completed a Psychiatric Review Technique form in which she noted that Plaintiff reported back pain, heel spurs, hearing loss, hernia and stress which effect his work such that he cannot stand for long periods of time. Dr. Eno noted that Plaintiff reported that he cares for his personal needs, watches television, reads, goes outside daily, talks on the telephone, alternates living in his truck or with his aunt and depends upon friends for housing. (Id. at 186, 188).

Plaintiff was treated at the VA Outpatient Clinic from December 2003 through June 2004, for refraction disorder, tear film insufficient nos, inguinal hernia, neck pain, dyspepsia, skin diseases, umbilical hernia, right inguinal hernia, tobacco use disorder, alcohol dependence, chronic low back pain, and joint pain (ankle/foot). (Id. at 247-327). He was assessed with gastroesophageal reflux disease, right inguinal hernia and umbilical hernia, tobacco use and chronic back pain, stable on Motrin. During this period of treatment at the VA Outpatient Clinic, Plaintiff had

11

approximately 24 scheduled appointments.  He cancelled seven of the appointments and was a "no show" at two appointments.  (Id. at 250-251).  Plaintiff's reported level of pain ranged from "0" to "9." (Id. at 314).  He was given heat pack and electronic stimulation to his lower back, middle traps, and upper traps in 20 minute spans. Plaintiff had hernia surgery in March 2004, and underwent physical therapy thereafter.   His medications included Ranitidine, Cyclobenzaprine and Acetominophen/Hydrocodone, Ibuprofen, Diclofenac, Indomethacin, Naproxen, Methocarbamol, artificial tears and eye ointment.  (Id. 263, 266-269).  In late April 2004, Plaintiff reported being satisfied with his medications and treatment. (Id. at 263).

On January 12, 2004, Plaintiff was seen by Blaine C. Crum, Ph.D. ("Dr. Crum") for a Psychological Evaluation.  Dr. Crum concluded that Plaintiff's capabilities fell in the upper 25% of his age group and that his achievement skills were consistent with his measured ability and reflect good fundamental reading, spelling and math skills.  He also opined that Plaintiff was depressed due to inability to find work. (Id. at 339-342).

On July 21, 2004, Plaintiff was seen at the Mobile VA Outpatient Clinic, for a post-op surgery evaluation, at which time he reported a level 3 pain on the 1-10 pain scale and his active medical problems were listed as a refraction disorder, tear film insufficient nos, neck pain, dyspepsia, skin diseases, umbilical

hernia, right inguinal hernia, tobacco use disorder, alcohol dependence, chronic low back pain and joint pain (ankle/foot). The treatment notes reflect that Plaintiff was counseled about his tobacco use. He had "no rated disabilities." (Id. at 343-359).

Plaintiff was treated at the VA Outpatient Clinic from July through September 2004. During this time period, Plaintiff reported pain ranging from a level 3-9 on the 1-10 pain scale, and he was prescribed Hydrocodone (pain), Omeprazole (GERD), Tramadol hcl (pain), Naproxen (pain/inflammation), Cyclobenzaprine (lower back-muscle relaxant), Nortriptyline hcl (pain and sleep), Ranitidine hcl (stomach), artificial tears/polyvinyl alcohol (dry eyes) and ointment (dry eyes). (Id. at 391-392). In August 2004, thoracic spine studies revealed osteophyte formation consistent with degenerative disease and his cervical spine studies showed osteophytic changes but otherwise normal. His exam revealed a full ROM of neck, no paraspinal tenderness; pain with flexion of lumbar spine; negative SLR and CLR, 75 degree flexion and extension of lumbar spine; passive SLR to 90 degrees bilaterally, knee to chest limited by weight; 5/5 motor strength throughout upper and lower extremities, antalgic gait, walked without assistive device, intact sensation. He stated that he hoped the pain clinic would finally acknowledge he has enough pain so he can "get some type of disability." Plaintiff was assessed with thoracic pain; cervical spondylosis; migraine headaches; lumbar spondylosis; and looking for

some disability even part time.  He was diagnosed with neck pain, chronic low back pain and ankle/foot joint pain.  (Id. at 360-395).

During September 2004, Plaintiff reported that he was getting minimal benefit from Tamadol and Notriptyline; however, he indicated that his pain level was at "4" as a result of working with a TENS unit and taking Naproxen and Cylobenzeprine. His thoracic spine x-rays revealed osteophyte formation consistent with degenerative disease; his cervical spine x-rays revealed osteophytic changes throughout the cervical spine but otherwise normal.  He was assessed with DJD, chronic axial myofascial pain syndrome; migraine, latent; and obesity.  Recommendations included ESR, RA; Lortab; bone scan pending for completeness; discontinue Tramadol and Nortriptyline and psychology assessment. (Id. at 360-395).

Plaintiff was treated again at the Mobile VA Outpatient Clinic from September to November 2004. During his September visit, Plaintiff reported that his pain was about the same (3 to 5 level depending on what he is doing), and that he was not taking any prescription medication.  Thoracic spine x-rays in November 2004 revealed an osteophyte formation consistent with degenerative disease.  His cervical spine x-rays showed osteophytic changes throughout but otherwise was normal.  His obesity, status post inguinal herniorraphy and hypertension were noted, as were his reports that if he lies down for more than 4 hours, he wakes with back pain. His assessment was degenerative joint disease, chronic

axial myofascial joint pain syndrome, migraine (latent) and obesity. Plaintiff's treatment included a TENS unit and Naproxen and Cylobenzeprine.  It was noted that Class III opiods should be useful and appropriate but not much else could be done.  (Tr. 396-421).

1. **Whether the ALJ erred by failing to find that Plaintiff's hearing loss is a severe impairment?**

Plaintiff contends that the ALJ erred by failing to find that his hearing loss constitutes a severe physical impairment affecting his ability to work, due to the findings of the social security employees and state agency physicians, his treating physician, his examining physician, vocational expert testimony, and the fact that the ALJ made accommodations at the first administrative hearing. Plaintiff adds that the ALJ also erred, by failing to explain his decision not to order a consultative medical examination to assess the severity of his hearing loss, even though he requested same.

At the second step of the sequential evaluation process, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe" impairment is one which "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520©).  The Eleventh Circuit has held that a claimant's impairment may be considered "not severe" only if it is a slight abnormality which has such a minimal effect on him or her, that it is not expected to interfere with the ability to work, regardless

of age, education or work experience.  See, e.g., Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984).  In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh Circuit clarified the severity determination:

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe.  Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

(Id. at 1031).  If an impairment causes only mild effects on a claimant's ability to work, or is amenable to medical treatment, it may be not severe.  In Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).  Thus, a claimant bears the burden of proving that an impairment is severe and more than a mere slight abnormality. Brady, 724 F.2d at 920.[5]

In his decision, the ALJ stated, with regard to Plaintiff's alleged hearing loss, as follows:

> The claimant additionally indicated that he had a mild hearing impairment . . . . The undersigned finds that the objective record has failed to reflect that the claimant has a hearing loss which has a significant impact on his ability to perform work-related activities. In addition, the undersigned notes that had the claimant sought treatment for this condition, it is feasible that a hearing aid would have corrected his "mild" hearing

---

[5] See also SSR 96-3p Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe, 1996 WL 374181, *1-2.

deficit. Based on the lack of objective evidence, coupled
with the claimant's lack of treatment for this condition,
the [u]ndersigned finds that this condition poses no more
than a minimal limitation on the claimant's ability to
perform work-related activities.

. . . . The undersigned finds that the claimant's alleged
impairment[] of . . . mild hearing loss [is a] non-severe
impairment[] . . . .

(Tr. 24, 31).

The undersigned acknowledges that a diagnosis, standing alone,
is insufficient for a finding that an impairment is severe,
particularly when evidence of record does not support such a
finding. Here, a review of the ALJ's decision reveals that some
physicians noted that Plaintiff reported that he had some or mild
bilateral hearing loss, one physician diagnosed Plaintiff with mild
hearing loss in both ears, and one physician noted that he was
slightly hard of hearing. See supra. However, no physician ever
concluded that Plaintiff's mild hearing loss caused any work-related
limitations of function. (Id.) Additionally, Plaintiff neither
sought, nor required, treatment for his hearing loss – including
hearing aides. Moreover, it is interesting that Plaintiff's
testimony and exaggerated "demonstration of hearing loss" at the
administrative hearing (that it was so severe that he had to move
closer to the ALJ to hear him),[6] actually contradicts his own

---

[6]At the July 22, 2004 hearing, Plaintiff commenced his testimony by
asking the ALJ to speak a bit louder, stating that "I can't quite understand
everything you're saying[;]" as a result, the ALJ stated that he did not want
to have "a yelling contest" and had Plaintiff change seats to confirm that he
could hear him. (Tr. 440).

description that his hearing loss was only mild. (_Id_. at 224, 339). Further, the ALJ did not err in suggesting that it was feasible that hearing aides would have improved his condition, had he sought treatment and obtained same. _See_, _e.g._, _Dawkins_, 848 F.2d at 1213 (finding that a remediable or controllable medical condition is generally not disabling). Finally, the vocational expert only considered Plaintiff's hearing loss as one of the impairments in a hypothetical, basing his decision that Plaintiff could not work on all of his impairments, not solely on his alleged level of hearing loss. With regard to Plaintiff's claim that the ALJ should have obtained a consultative examination for his hearing loss, an ALJ need only do so if he or she determines that one is necessary to making an informed decision because the evidence of record is insufficient. _See_, _e.g._, _Holladay v. Bowen_, 848 F.2d 1206 (11th Cir. 1988); _Reeves v. Heckler_, 734 F.2d 519, 552 n. 1 (11th Cir. 1984). Here, the ALJ did not err in failing to obtain such an examination because the evidence of record was sufficient for him to find that the hearing loss was a non-severe impairment. In short, _nothing_ in the record suggests that Plaintiff's alleged hearing loss was anything more than slight or mild. Accordingly, Plaintiff's claim fails. _See_, _e.g._, _Bridges_, 815 F.2d at 625; _Brady_, 724 F.2d at 922.

**2.   Whether the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's physical limitations when determining his RFC?**

Plaintiff contends that the ALJ erred under SSR 96-8p because he failed to perform a function-by-function analysis of his physical limitations insofar as he failed to discuss his ability to sit, stand, walk, push, pull, bend, squat, crawl or reach, and because no physician completed a physical capacities evaluation ("PCE").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). In Green v. SSA, 223 Fed. Appx. 915, 2007 U.S. App. LEXIS 10121 (llth Cir. Ala. 2007), the Eleventh Circuit addressed a plaintiff's claim that the ALJ had erred in determining her RFC because he discredited her doctor's assessment and in the absence of the doctor's assessment, there was purportedly nothing in the record to support the ALJ's RFC conclusion. In rejecting the plaintiff's claim, the Court found that:

> [o]nce the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [the claimant]'s limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over the counter medication. Thus, substantial evidence supports the ALJ's determination that [the claimant] could perform light work.

(Id. at 924.) See also Freeman v. Barnhart, 220 Fed. Appx. 957; 2007 U.S. App. LEXIS 6878 (llth Cir. Ga. 2007). In Freeman, the

19

Court held that:

> [w]hile the ALJ could have been more specific and
> explicit in his finding that he did consider all of
> the evidence and found that it did not support the
> level of disability [the plaintiff] claimed, only
> after he determined that she failed to carry her
> burden of showing that she had become disabled from
> performing any of her work-related activities did he
> state that she could perform light exertional
> activity. Therefore, the ALJ complied with SSR 96-8p
> by considering [the plaintiff]'s functional
> limitations and restrictions and, only after he found
> none, proceeding to express her residual functional
> limitations in terms of exertional levels.

(Id. at 960).

In this case, the ALJ concluded that Plaintiff has the following severe impairments: status post inguinal hernia, DJD, chronic axial myofascial pain syndrome and degenerative osteoarthritis of the lumbar and thoracic spine. He also noted that the records reflect that the claimant did not seek any medical attention for eleven months following his alleged onset date of disability and when he did seek medical attention, he was able to walk for two to three miles in the rain to get to his appointment. (Tr. 28). The ALJ further noted that at the administrative hearing, Plaintiff testified that he was able to lift five to ten pounds frequently and fifteen to twenty pounds occasionally during a day. (Id.) The ALJ also noted that he did not find credible Plaintiff's allegation that bone spurs precluded his ability to stand for any length of time, and that Plaintiff's high level of functioning was inconsistent with a person who suffers from

debilitating impairments. (Id.)  The ALJ then concluded that, based

on the foregoing and on the "record as a whole," Plaintiff retains

the RFC for light work:[7]

> Based on a review of the medical evidence of record, as
> well as the testimony of the claimant at the hearing . .
> . the preponderance of the evidence contained in the
> record does not support the claimant's allegations of
> totally incapacitating symptomatology resulting from his
> impairments. . . .
>                          * * *
> Based on the foregoing and the record as a whole . . .
> the claimant has the residual functional capacity to
> perform a full range of work activity at a light level of
> exertion with no mental limitations. Light work involves
> lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds.
> If someone can do light work, it is determined that he
> can also do sedentary work. . . .

(Id. at 27, 29).  The ALJ determined that Plaintiff could perform

light work, which he described as lifting no more than 20 pounds at

a time with frequent lifting/carrying of objects up to 10 pounds.

(Id. at 29).

Based upon a review of the record, the undersigned finds that

substantial evidence supports the ALJ's finding that Plaintiff

---

[7]As noted by the Eleventh Circuit:

Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and
pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, you must have the
ability to do substantially all of these activities.

Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987).  Moreover, "light work
requires standing or walking, off and on, for a total of approximately 6 hours
of an 8-hour workday."  SSR 83-10, 1983 WL 31251 (S.S.A).

retains the RFC for light work. Before reaching the RFC conclusion, the ALJ properly considered the record evidence regarding Plaintiff's functional capabilities, including Plaintiff's own assertions and the medical records. As noted by the ALJ, Plaintiff indicated that during the relevant time period, he had walked 2 to 3 miles in the rain, and that he was capable of lifting 10 to 20 pounds. Moreover, while the medical records demonstrate that Plaintiff suffers from degenerative joint disease of the lower back, and that he may have inflammatory arthritis, which may be contributing to his back pain, none of the doctors imposed any restrictions on Plaintiff's daily activities or work related abilities. Additionally, the records reflect that Plaintiff has received conservative treatment for his pain, and that the proscribed treatment has provided him some relief. Only after addressing Plaintiff's functional limitations, or lack thereof, did the ALJ consider Plaintiff's RFC. In so doing, he complied with SSR 96-8p. The fact that the ALJ did not expressly address each functional ability, such as the ability to push, or pull, is of no moment where the record is devoid of any evidence that suggests that Plaintiff does not have the RFC to perform at the light level of exertion.

**V.    Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is

hereby **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this <u>Report and Recommendation</u>.

**DONE** this **29ᵀᴴ day of August, 2007.**

    <u>      /s/ SONJA F. BIVINS      </u>

    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to

this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                        **/s/ SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**